[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
1. PROCEDURAL BACKGROUND
On June 14, 1993, the Planning and Zoning Commission of the Town of Wallingford granted the application of Bristol-Myers Squibb for a special permit to construct a Heliport on its property in the Town of Wallingford. The plaintiff Peter Wasilewski appealed that decision with an appeal dated June 22, 1993. This court concluded that the failure to name the Town or the Commission in that appeal constituted subject matter jurisdiction and in a memorandum dated CT Page 10767 October 28, 1993 dismissed the appeal.
Counsel was notified of that dismissal on November 9, 1993. With a return date of November 30, 1993, counsel filed a second appeal which was served on the various defendants named therein between November 10 and November 12, 1993. In a memorandum dated May 13, 1994 this court held:
 "While recognizing that the Supreme Court in Castellon addresses § 8-8p almost as an afterthought, recognizing further that the decision does not analyze the difference between defects of form and defects going to jurisdiction, nevertheless it appears to the court that since the plaintiff took his initial appeal in a timely manner, refiled his appeal within the time limits set forth in § 8-8q, and the town was not prejudiced by the defect in the original appeal, Castellon is controlling and the motion to dismiss is denied. As a result, the appeal was heard on the merits."
FACTS
The appeal arises from the June 14, 1993 granting by the Commission of the application for a special permit for the construction of a helipad on the defendant Bristol-Myers Squibb's 180 acre property at 5 Research Parkway, Wallingford. The property is located in an industrial expansion ("IX") district where helipads are a use allowed by special permit. The existing helipad is located in the southwestern section of the property. The proposed helipad, and associated improvements, will be located in the northeastern portion of the property. Upon completion of the helipad Bristol-Myers will transfer its helicopter license to the new location. Bristol-Myers has obtained all necessary approvals from the Federal Aviation Administration and the Connecticut Department of Transportation for the new helipad.
The evidence in the record reasonably supports the conclusion that the proposed helipad location is the best and most suitable location for the helipad on the property. The proposed location is superior to the existing location from the perspective of helicopter operations. CT Page 10768
ISSUE
Did the defendant Commission fail to require compliance with § 4.9G of its regulations requiring that an application for a special permit in the "IX" zone comply with performance standards?
AGGRIEVEMENT
The plaintiff in paragraph 4 of the amended complaint alleges that he owns land within 500 feet of the applicant's property. Statutory aggrievement requires ownership within 100 feet § 8-8(1).
The plaintiff testified that in his opinion the value of his property would be diminished by the applicant proposed helipad. He further testified that he would be disturbed by noise.
The burden of proving aggrievement rests on the plaintiffTangbein v. Planning Board, 145 Conn. 674, 676 (1958). The plaintiff has neither plead nor proven statutory aggrievement.
To be classically aggrieved the plaintiff must be "specially and injuriously affected in his property rights. Taylor v. Boardof Zoning Appeals, 145 Conn. 655, 662 (1958). This the plaintiff has proven. The court finds the plaintiff aggrieved.
DISCUSSION
While the plaintiff in his brief raised questions about the adequacy of the evidence presented, the failure of the Commission to find reasons, and the adequacy of the notice of the public hearing; the plaintiff virtually conceded at trial that the real issue was whether or not the Commission complied with § 4.9G of its regulations.
It is well settled in Connecticut case law that zoning approvals are not invalidated when reasons are not cited by the Zoning Commission. Morningside Association v. Planning and ZoningCommission, 162 Conn. 154 (1972); Neilson v. Zoning Commission,149 Conn. 410 (1962); Gross v. Planning and Zoning Board of Appeals,171 Conn. 326 (1976).
The court finds that the notice of public hearing was not inadequate or defective. The burden of proving such inadequacy or defect is on the person asserting its insufficiency. Peters v.Environmental Protection Board, 25 Conn. App. 164 (1991); Huck v.CT Page 10769Inland Wetlands, 203 Conn. 525 (1987). The standards for adequate notice are examined in considerable detail in Koepke v. ZoningBoard of Appeals, 223 Conn. 171 (1992). Koepke leads one to the conclusion that the notice should contain four elements:
"1. The subject matter of the appeal.
2. The location of the property at issue.
3. The owner of the property.
4. The proposed use of the property."
The notice in the instant case may have been slightly misleading to the extent that it indicated that the proposed heliport would replace an existing heliport. In fact, the proposed heliport would not only replace the existing heliport but would add the capacity for a second helicopter. Nevertheless, the court finds that the notice falls far short of being defective under the standards laid down by the Supreme Court in Koepke.
The serious question in this case is presented by the performance standards set out in § 4.9G of the Wallingford regulations.
Generally under the Wallingford regulations, special permits are obtained under the provisions set forth in § 7.5. Section 7.5B explains and enumerates special permit objectives. In general terms those objectives provide: 1) that the use be appropriately located, 2) that the use be compatible in scale with surrounding uses, 3) that the use not have a significant adverse affect on safety, and 4) that the use not prevent or inhibit the orderly growth and development of the area. Plaintiff conceded at oral argument that the record is sufficient to warrant the court's finding of compliance with a special permit objectives.
Accordingly, the court is left with the sole question of examining the performance standards for any use in an "IX" district. Those performance standards found in § 4.9G provide in § G-1:
 "Any use within the IX district shall be established, operated and maintained in such a manner as to provide that each use shall be a good neighbor and in no way detract or limit CT Page 10770 the intended development of the area."
The section then goes on to provide in § G-2 that certain conditions are imposed as standards to be used to determine compliance with Those standards are described in § G-2a-g and may be summarized as follows:
 a. noise levels, b. vibration levels, c. odor levels, d. fly ash, dust fumes and vapor level, e. smoke level, f. restrictions on glare and heat, and g. restrictions on liquid and solid waste.
Plaintiff does not seriously claim that there is a violation of performance standards c through g. Plaintiff strenuously asserts that there is a violation of, or at least no evidence of compliance with, the noise standards found in paragraph 2a or the vibration standards found in paragraph 2b. It is virtually conceded by the defendant Bristol-Myers, and entirely conceded by the defendant Commission, that there is no evidence in the record that supports a conclusion that the noise or vibration standards are met.
The defendant, Bristol-Myers, argues that the performance standards are not applicable to helicopters or in the alternative if they are applicable they are standards by which the performance may be evaluated at some point after the special permit review process. The defendant Town disagrees with Bristol-Myers in its assertion that the performance standards are not applicable to helicopters, but agrees with Bristol-Myers that the performance standards are to be applied after operations begin and are not a requirement for the initial granting of the permit.
The court agrees with the position of both the town and the plaintiff that the performance standards apply to this operation The court would first observe that the defendant Bristol-Myers' argument that the standards do not apply to helicopters begs the question in this case. Bristol-Myers' permit is not for a helicopter but rather for a "helipad". Bristol-Myers' argument that because helicopters are transient, they are not subject to the regulation might be extended to an argument that because airplanes are transient, airports are not subject to special permit regulations. The simple fact is that Bristol-Myers is not applying for a permit for a helicopter but rather for a structure known as a helipad. CT Page 10771
Of at least equal importance, the regulation in question provides:
 "Any use within the IX district shall be established, operated and maintained in such a manner as to provide that each use shall be . . ."
There simply is no basis, when one reads the clear language of the regulation, to say that a use for a helipad in an "IX" district is not subject to the performance standards.
Although it might be possible to adopt the plaintiff's position that the performance standards must be met in the application process when the application is for a helipad, the court agrees with the town's position that these are standards for performance after the commencement of operation of a use.
The court notes that the performance standards pertain to "any use" whether permitted by special permit, by special exception from the ZBA, or as subject to site plan review under § 4.9 of the regulation. The court notes that the regulation permits among other things "shops for custom work, repairing and fabricating"; "fabricating and manufacturing or industrial or research operations not otherwise prohibited . . ."; "storage and warehousing . . .". These uses are clearly subject to the requirements of the performance standards. It appears to the court that a shop for "repairing and fabricating" may or may not violate one of the performance standards in § G-2a-g. There is no way to test for a violation until one knows the specifics of the use that is proposed. Accordingly, it would appear impossible to test the permitted users for compliance with the performance standards before they exist.
The court sustains the issuance of the permit and the appeal is overruled. The court sustains the issuance of the permit because it finds that the performance standards are applicable only after the commencement of activity under an issued permit. The court notes that the town indicated at oral argument that its position was that the helipad when established must comply with the performance standards and in particular must comply with standard § G-2a relative to noise and § G-2b relative to vibration. It is the court's expectation, relying on the town's position at oral argument, that if subsequent events prove that the heliport violates any of the performance standards, and in particular standard § G-2a or § G-2b, the town would issue to the defendant CT Page 10772 Bristol-Myers a cease and desist order prohibiting the continuing operation of the helipad in violation of the performance standards.
The court by,
Kevin E. Booth, Judge